# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHARLES D. ZEHRING, Jr.** : | |
| Plaintiff, : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-CV-3195** |
| : | |
| **JAMIE SORBER**, *et al.*, : | |
| Defendants. : | |

## MEMORANDUM

**SLOMSKY, J.**                                                                 **JULY 18, 2020**

*Pro se* Plaintiff Charles D. Zehring, Jr., a prisoner incarcerated at SCI-Phoenix, has filed a Complaint using the Court's form for prisoners to bring federal constitutional law claims pursuant to 42 U.S.C. § 1983. Named as Defendants are SCI-Phoenix Superintendent Jamie Sorber, Pennsylvania Department of Corrections ("PaDOC") Deputy Secretary Tammy Ferguson, PaDOC Director of Bureau of Health Care Services Joseph Silva, SCI-Phoenix Medical Director Dr. Stephen Wiener, and Dr. Lee Hanuschak.[1] Zehring also seeks leave to proceed with this case without paying the filing fee. For the following reasons, Zehring's request to proceed *in forma pauperis* will be granted, the Complaint will be dismissed in part with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and the balance of the claims will be served.

## I.      FACTUAL ALLEGATIONS

Zehring's allegations are lengthy. He contends that the Defendants were deliberately indifferent to his urology and ear-related health issues and seeks to bring claims under the Eighth

---

[1] Defendant Hanuschak's name is not spelled consistently in the Complaint. The Court will use the spelling in the caption.

Amendment, as well as related state law claims, apparently for medical malpractice and civil conspiracy. He also asserts due process claims under the Fifth and Fourteenth Amendments based on Defendants' responses to his numerous grievances. (ECF No. 2 at 4.)[2]

### A. Urology Claim

On January 2, 2018, Zehring wrote to Defendant Silva, whom he contends is responsible for assuring that all prison medical services are provided within the bounds of sound medical practice, and whose office allegedly receives all appeals of grievances concerning prison medical services, to complain that outside medical care for his urology problems was being delayed for non-medical reasons. (*Id*. at 8.) On May 11, 2018, Zehring had his second urological surgery which required a post-surgical catheter. (*Id.*) The catheter was removed five days later. (*Id*. at 9.) The surgery was performed by non-Defendant Dr. Manfrey, a urologist contracted by the PaDOC. Zehring was to see Dr. Manfrey for a follow up appointment within thirty days. (*Id.* at 8.)

On August 5, 2018, Zehring again wrote to Silva complaining about the lack of follow up care. (*Id*.) Silva replied on September 13, 2018, stating that Zehring was provided with medical care on par with community standards, including access to outside specialists. (*Id*.) On September 24, 2018, Zehring wrote to a non-Defendant named Welsh, who is identified as a Correctional Health Care Administrator, to complain that he had not received a follow up appointment with Dr. Manfrey. (*Id*.) On October 18, 2018, he wrote to non-defendant Deputy Warden Sipple, whom Zehring states is in charge of the SCI-Phoenix medical department, to complain that Welsh would not schedule his outside appointment with Dr. Manfrey, as well as

---

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

with an ear, nose and throat doctor to address issues he was having with his CPAP device. (*Id*. at 8-9.)

Zehring received his post-surgical appointment with Dr. Manfrey on November 16, 2018 but complains that the appointment took place at SCI-Phoenix rather than at Dr. Manfrey's office. (*Id*. at 9.) He asserts the delay was unreasonable since Manfrey visits the prison twice each month. (*Id*.) He also asserts he was not treated by any other prison medical personnel for seven months after his surgery.

Manfrey told him during the appointment that he required an endoscopy because the surgical procedure did not relieve his symptoms and that the procedure would be done before Christmas 2018. (*Id*.) On December 22, Zehring wrote to Silva complaining that the endoscopy had not been scheduled. Silva replied on December 27, that SCI-Phoenix would provide medical services on par with community standards and SCI-Phoenix staff would assess and appropriately treat his condition. (*Id*.) On January 25, 2019, an ultrasound was performed at SCI-Phoenix; Zehring asserts he was not told why he was given an ultrasound, he assumed it was related to Dr. Manfrey's treatment, but he expected to receive treatment at Manfrey's outside office. (*Id*.) On February 5, he filed another grievance about the delay in seeing Manfrey. He asserts that Defendants Ferguson and Silva affirmed his grievance in part related to the delay in scheduling the follow up appointment. (*Id*.)

Zehring next saw Dr. Manfrey on February 21, 2019 for an endoscopy that was performed at Manfrey's office. (*Id*.) Manfrey wrote him a prescription for medication, but Zehring filed a grievance two weeks later because he had not received his medication. (*Id*. at 9-10.) He next saw Manfrey at the prison on April 5, 2019. Zehring complains that the appointment should have happened at Manfrey's office rather than at SCI-Phoenix. (*Id.* at 10.)

Manfrey told him he needed another procedure and needed to be seen at his office for further testing. (*Id.*) Zehring attended sick call on five dates to ask about the follow up and emailed Defendant Dr. Hanuschak, who allegedly schedules outside medical appointments. (*Id.*) He later spoke with Hanuschak while waiting in line at sick call and asked why the April 5 appointment was done at the prison rather than at Manfrey's office. Hanuschak responded that Manfrey wanted all appointments at his office but there were insufficient prison resources for all medically necessary outside trips. (*Id.*)

Zehring alleges that he did not receive the outside appointment because of this non-medical reason and filed a grievance on May 12, 2019. He asserts that Ferguson and Silva failed to address the issue he raised in his grievance, made mistakes of fact, and denied his grievance on the ground that he received proper medical care. (*Id.*)

In June 2019, Zehring was suffering from a distended bladder. He attended sick call on June 14 and was seen by Dr. Hanuschak. He asked to see Dr. Manfrey but was told he would receive an ultrasound at the prison before being scheduled to see Manfrey. (*Id.*) Zehring wanted the ultrasound to be done at Manfrey's office, but Hanuschak said it could be done at the prison. (*Id.*) Zehring was seen by Dr. Manfrey on August 8, 2019 at SCI-Phoenix. (*Id.*) Manfrey allegedly told him that he needed a special type of ultrasound that could not be performed at the prison and made a request to SCI-Phoenix officials to have Zehring brought to his outside office. (*Id.* at 10-11.) Zehring received an appointment at Manfrey's office on September 25, 2019. (*Id.* at 11.) He performed an ultrasound that indicated Zehring's second surgical procedure worked, but that he had an unstable bladder. Manfrey prescribed a medication and asked to see Zehring again at SCI-Phoenix in thirty days. (*Id.*)

4

On November 2, 2019, Zehring filed another grievance because the 30-day appointment had not been scheduled. He also wrote to Silva on November 3. Silva responded on December 9, 2019 stating he should use the prison grievance process to raise his claim. Ferguson and Silva denied the grievance, allegedly on the ground that prison medical personnel had made a medical determination that a two-month follow up appointment was appropriate. (*Id*.) Zehring received another appointment with Dr. Manfrey at SCI-Phoenix on February 21, 2020. (*Id*.) He alleges that the delay in scheduling the appointment was for non-medical reasons based on lack of prison resources. (*Id*.)

At the February 21 appointment, Manfrey told Zehring he would need peripheral nerve stimulation treatment to ease his symptoms and Manfrey would arrange with the SCI-Phoenix Medical Director, presumably Defendant Dr. Wiener, for him to get the treatment at the prison. (*Id*.) Manfrey also put him down for another appointment in 30 days. On February 28, Zehring filed another grievance to complain that he had not been told what the Medical Director determined would be his treatment plan. Defendants Sorber and Silva responded that "medical conditions that require follow-up will be referred to a PA, CRNP or physician in which you will be educated regarding your condition." (*Id*.)

On March 18, 2020, Zehring was seen by Dr. Wiener for complaints about migraine headaches. (*Id*.) He raised with Dr. Wiener the issue about a follow up appointment with Dr. Manfrey and was told that Manfrey never relayed that Zehring needed a follow up appointment. (*Id*.) Wiener also allegedly told Zehring that he attempted to speak with a PaDOC Deputy Secretary named Bickle about the lack of resources to arrange outside medical services, but the COVID-19 emergency caused all outside visits to be cancelled. (*Id*. at 11-12.)

5

Zehring alleges that Defendants Silva, Wiener and Hanuschak, along with unspecified "named defendants of the PaDOC," acted under a policy or practice to delay him medical treatment for non-medical reasons. (*Id.* at 12.) He alleges that the delay resulted from the lack of funding for transportation services and "institutional operational issues" over which Defendants have direct or indirect control. (*Id.*) He also alleges that unspecified Defendants attempted to conceal these reasons in their responses to his grievances. (*Id.*) He alleges conspiracies among the named Defendants to obstruct justice in the grievance process, violate the standard of care for his urology issues, delay medical care for non-medical reasons, violate his due process rights in the grievance process, and commit malpractice by ignoring Dr. Manfrey's recommendations. (*Id*. at 12-13.)

### B. Ear Tumor Claim

On August 16, 2018, Zehring underwent surgery at Temple Hospital to remove a tumor in his right ear. (*Id*. at 14.) It was performed by Dr. Pollak who, Zehring believes, requested two follow up postsurgical visits. He was taken to see Dr. Pollak for a postsurgical appointment on August 27, 2018. (*Id*.) On September 24, Zehring wrote to non-Defendant Welsh to ask about the second appointment and, on October 18, he wrote to non-Defendant Sipple who did not respond. (*Id*.) He was taken to see Dr. Pollak for the second postsurgical visit on November 17. At that time, he was scheduled for a third visit because he had developed a polyp in his ear. (*Id*.) That visit occurred January 23, 2019. Dr. Pollak then scheduled an additional surgery, performed on April 4, 2019, to implant a device to replace the bones removed from the ear during the tumor surgery. (*Id*. at 14-15.) Zehring was taken to a postsurgical appointment on April 10, 2019, but no further appointments were made. (*Id*. at 15.)

On May 10, 2019, Zehring asked Dr. Hanuschak if another appointment had been made with Dr. Pollak and was told it had not because of lack of resources for outside medical visits. (*Id.*)  On June 2, he filed a grievance about the failure to provide another outside visit and Defendants Ferguson and Silva denied it on the grounds that a clinical decision by prison medical staff indicated that he did not need another visit for six months.  (*Id.*)

On September 4, 2019, Zehring saw an ENT specialist named Dr. Whitely who determined that his ear was infected and prescribed an antibiotic.  (*Id.*)  Whitely told him he should see Dr. Pollak within three weeks.  On October 23, he filed a grievance because the appointment had not been scheduled even though his ear was bleeding.[3]  He also wrote to Silva. He was taken to see Dr. Pollak on November 4.  (*Id.* at 16.)  She diagnosed a polyp on his eardrum, applied medication, and told him it would have to be surgically removed if it did not heal.  (*Id.*)  Zehring filed a grievance on November 10, 2019, complaining that the medication Dr. Pollak recommended he use for six months was not renewed and another medication was only renewed for 30 days.  (*Id.*)  This grievance was also denied by Ferguson and Silva.

Dr. Wiener allegedly told Zehring on December 18, 2019 that outside medical visits were delayed because there was insufficient transportation resources.  (*Id.*)  Zehring filed a grievance on February 28, 2020 complaining that he has still not seen Dr. Pollak since the last time he saw her in November.  This grievance was denied by Sorber and Silva because Zehring had received medical treatment from the prison audiologist, a telemed appointment, and that the in-person visit with Dr. Pollak was cancelled due to COVID-19.  (*Id.*)  Dr. Wiener also told him on March

---

[3] The grievance was finally denied on February 20, 2020 by Ferguson and Silva on the ground that he had several upcoming appointments scheduled based on clinical decisions of the medical staff.  (*Id.* at 15-16.)

7

18 that the in-person appointment was cancelled due to COVID-19.  (*Id*. at 17.)  At that appointment with Dr. Wiener, Dr. Wiener found wax and "white spots" in his ear.  (*Id.*)

Zehring alleges that the delay in treating his ear has resulted in the destruction of his ear drum.  (*Id*.)  He makes the same conspiracy allegations regarding his ear issues as with his urology issues.  (*Id*. at 18.)  Zehring seeks injunctive relief to bar Defendants from further delaying medical care for his urology and ear issues, to bar their keeping him in quarantine at the prison when he returns from outside care appointments, and to provide him with a COVID test and N-95 mask.  (*Id*. at 19.)  He also seeks money damages for his claims.  (*Id*.)

## II.    STANDARD OF REVIEW

Because Zehring is unable to pay the filing fee in this matter, the Court grants him leave to proceed *in forma pauperis*.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).   Conclusory allegations do not suffice.  *Id.*  As Zehring is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

---

[4] The "Motion for Acceptance of Alternate Account Statement" (ECF No. 4) will be granted; the Court accepts Zehring's submission (ECF No. 5) as substantial compliance with 28 U.S.C. § 1915(a)(2).  Because Zehring is a prisoner, under the terms of the Prison Litigation Reform Act he is still required to pay the filing fee in full in installments.

### III.    DISCUSSION

Zehring's Complaint cites 42 U.S.C. § 1983 as the basis for the Court's subject matter jurisdiction over his claims. That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### A.    Claims Based on Grievances

Zehring asserts due process claims under § 1983 based on alleged obstruction of justice in the grievance process. All claims based on the handing or result of Zehring's grievances are not plausible. Claims based on the handling of prison grievances fail because "[p]rison inmates do not have a constitutionally protected right to a grievance process." *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam). Accordingly, the facts alleged by Zehring about grievances do not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice against Defendants Superintendent Sorber, Deputy Secretary Ferguson, and Director Silva.

#### B.    Claims Based on Deliberate Indifference to Serious Medical Needs

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is

not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, No. 19-1684 (3d Cir. Apr. 27, 2020, slip op. at 13 (holding that attaching documents to grievance form is insufficient under *Rode* to show personal direction or actual knowledge by recipient of underlying facts)). Additionally, "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill*, 372 F.3d at 236; *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (per curiam) ("Prison officials cannot be held to be deliberately

10

indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

Zehring has made plausible allegations that he has serious urology and ear-related medical needs.  He has made plausible allegations that the medical professional Defendants he has named, Dr. Wiener and Dr. Hanuschak, were aware of his needs.  Finally, he has asserted that each medical professional delayed his treatment due to the lack of transportation or other resources, rather than for a medically based reason.  Accordingly, his Eighth Amendment claims against Wiener and Hanuschak are sufficient for § 1915 screening purposes.

Zehring's claims against the non-medical Defendants, Superintendent Sorber, Deputy Secretary Ferguson, and Director Silva, based on the delay in medical treatment are grounded on their alleged personal knowledge of his need for treatment and their personal actions that failed to fund such treatment adequately, resulting in non-medical reasons for his delay in receiving treatment.  While, as stated, non-medical prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff, Zehring's non-grievance based claims against these Defendants are based on their administrative decisions to deny funding and resources for the provision of his medical treatment.  As such, these claims are also sufficient for purposes of § 1915 screening and will be served.  *See Reynolds v. Wagner*, 128 F.3d 166, 170-71, 174-75 (3d Cir. 1997) (holding that prison did not violate inmates Eighth Amendment rights by charging inmates modest fees for certain types of medical care since policy excluded, among other things, emergency services, and under it, no inmate could be denied "essential" or "needed" medical treatment, regardless of his refusal or inability to pay the fee) (citing *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 347); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir.

1985) (holding that prisoner stated a deliberate-indifference-due-to-lack-of-funding claim against non-medical defendants and county who were responsible for insuring that adequate funds were provided to meet the medical needs of inmates); *Gaines v. Choctaw Cty. Comm'n*, 242 F. Supp. 2d 1153, 1163 (S.D. Ala. 2003) (holding that allegation of deliberate indifference to serious medical needs arising from failure to fund medical care stated a claim under § 1983); *Cox v. Glanz*, Civ. A. No. 11-457, 2011 WL 6740293, at *4 (N.D. Okla. Dec. 22, 2011) (holding that prisoner stated a § 1983 claim against non-medical defendant based on allegation that he understaffed the medical treatment facility for inmates and intentionally refused to provide adequate funding for the mental health treatment of inmates); *Hoffer v. Inch*, 382 F. Supp. 3d 1288, 1295, 1300 (N.D. Fla. 2019) (finding that where Secretary of Department of Corrections conceded that Hep-C was a serious medical condition and the failure to provide treatment for Hep-C virus to prisoner was due to lack of funding, prisoner was entitled to partial summary judgment and injunction on deliberate indifference claim).

Finally, Zehring's state law claims for conspiracy and malpractice based on his deliberate indifference allegations also are sufficient for § 1915 screening. *See Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) (stating that, under Pennsylvania law, "[t]he essential elements of a claim for civil conspiracy are as follows: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."); *Brown v. Hahnemann Univ. Hosp.*, 20 F. Supp. 3d 538, 542 (E.D. Pa. 2014) ("Under Pennsylvania law, medical malpractice is 'broadly defined as the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all

liability-producing conduct arising from the rendition of professional medical services.'")  (quoting *Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003).

### IV. CONCLUSION

For the reasons stated, all due process claims in Zehring's Complaint based on the handing of grievances are dismissed with prejudice. Zehring's Eighth Amendment claims and related state law claims pass § 1915 screening and will be served. An appropriate Order follows.

**BY THE COURT:**

**/s/Joel H. Slomsky, J.**
 **JOEL H. SLOMSKY, J.**